# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 10-20715-CIV-ALTONAGA/Brown

**KENNETH F. HACKETT & ASSOCS.,
INC.**, and all others similarly situated,

      Plaintiff,

vs.

**GE CAPITAL INFO. TECH. SOLUTIONS,
INC.** d/b/a **IKON FIN. SERVS.**; and **IKON
OFFICE SOLUTIONS, INC.**,

      Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** came before the Court upon Defendant, GE Capital Information Technology

Solutions, Inc.'s ("GE['s]") Motion to Transfer Venue ("Motion") [ECF No. 16], filed May 13,

2010.  The Court has carefully reviewed the parties' written submissions and applicable law.

## I.  BACKGROUND

      This case arises out of a contract for copying equipment between GE and Plaintiff, Kenneth

F. Hackett & Associates ("Hackett"), a Florida corporation.  GE, a California corporation with its

corporate office located in Georgia, "provides lease finance and invoicing services for Ikon, a leading

provider of document management systems and services nationwide."  (Am. Compl. ¶ 7 [ECF No.

31]).  Ikon leases copiers and printers supported by a team of service professionals.  (*See id.*).

      In August 2008, Hackett and GE entered into an Image Management Agreement ("IMA")

[ECF No. 31-1], which was drafted in Georgia and signed in Florida, to lease a copier.  (*See* O'Neill

Aff. ¶ 5 [ECF No. 16-1]; Daugherty Aff. ¶ 4 [ECF No. 41-1]).  In exchange for the lease payments,

Case No. 10-20715-CIV-ALTONAGA/Brown

GE provided "the copier, related services, and a guaranteed minimum monthly number of copies" of 15,000. (Am. Compl. ¶ 10; *see* IMA 2). Through the IMA's forum selection clause, Hackett consented to venue and non-exclusive jurisdiction in Georgia and its home state (Florida) to resolve any conflicts under the IMA. (*See* IMA 3, ¶ 12). Hackett received the leased copier in Florida and proceeded to pay for the lease from Florida. (*See* Daugherty Aff. ¶¶ 7–8). Meanwhile, GE managed the billing and accounting for the IMA from its office in Macon, Georgia. (*See* O'Neill Aff. ¶¶ 7–8). The Macon office maintains the records, statements, and staff GE employs to manage its IMAs. (*See id.* ¶¶ 7–10).

Hackett alleges that in September 2009, after the first year of the agreement, GE improperly increased the original minimum payment by 5%. (*See* Am. Compl. ¶ 16). Although the IMA allows GE to "increase the 'Cost Per Image' and the 'Cost of Additional Images' up to 5% annually" if the agreement is longer than twelve months (Am Compl. ¶ 11; *see* IMA 3, ¶ 10), Hackett alleges this clause does not apply to its IMA because it does "not pay a 'Cost Per Image.' Instead [it pays] a fixed price for a 'bundle' which includes lease of the copier, related services, and a set amount of copies." (Am. Compl. ¶ 12).

Hackett brought suit pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of two classes: (1) a "Nationwide Monetary and Injunctive Class as to GE Capital"; and (2) a "Florida Monetary and Injunctive Class as to both Defendants [GE and Ikon]." (*Id.* ¶ 27 (emphasis omitted)). Hackett seeks relief through breach of contract under Georgia law, declaratory judgment pursuant to 28 U.S.C. § 2201, and a violation of Florida's Deceptive and Unfair Trade

Practices Act ("FDUTPA").  (*See id.* ¶¶ 37, 41, 46).  In the Motion, GE asserts the matter should be transferred to the Middle District of Georgia under 28 U.S.C. § 1404.  (*See* Mot. 1).

## II.  LEGAL STANDARD

Federal law provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *accord Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002).

Once a court finds an action could have been brought in the transferee forum, the court "must weigh various factors . . . to determine if a transfer" is justified.  *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985).  Courts should consider at least the following factors to determine whether transfer is appropriate:

> (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of service of process to compel the presence of unwilling witnesses, (5) the cost of obtaining the presence of witnesses, (6) the public interest, and (7) all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Meterlogic*, 185 F. Supp. 2d at 1300 (numeration added); *accord Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045-CIV-ZLOCH, 2002 WL 1940724, at *2 (S.D. Fla. Aug. 13, 2002).

It is the movant's burden to establish transfer is warranted.  *See Cent. Money Mortg. Co. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000).  This burden is high: a plaintiff's choice of

forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (internal quotation marks and citation omitted); *accord Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) ("Transfer can only be granted where the balance of convenience of the parties *strongly favors* the defendant."). "However, . . . a plaintiff's choice of forum will be afforded less deference where . . . the action is a class action." *Moghaddam*, 2002 WL 1940724, at *2. Likewise, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp.*, 617 F. Supp. at 10.

## III.  ANALYSIS

GE asserts this action could have been brought in Georgia and the balance of convenience heavily favors transfer to Georgia.  GE notes any overcharging on the IMA would have occurred in its Georgia accounting office, the IMA was drafted in Georgia, its forum selection clause favored Georgia, and IMA-related staff, documents, and records are all in Georgia.  (*See* Mot. 2, 11–16).  GE further contends Georgia is a more appropriate forum because five witnesses are from Georgia, one claim is based on Georgia contract law, and Georgia's power to subpoena would ensure a less costly trial as most of the witnesses are in Georgia.  (*See id.* 13–14, 17–18).  Ikon, which supports GE's Motion, contends it would call witnesses from Georgia and Pennsylvania.  (*See* Resp. in Supp. of Transfer ("Ikon's Resp.") 2 [ECF No. 48]).

Hackett's Response [ECF No. 41] asserts GE has not meet its burden of showing a transfer to Georgia is warranted.  Hackett maintains Florida is the more appropriate forum because the IMA was signed in Florida, Hackett received and paid invoices from Florida, the leased copier was in

Case No. 10-20715-CIV-ALTONAGA/Brown

Florida, and the action includes a claim under the FDUTPA for a Florida-only class. (*See* Hackett's Resp. 6–7). Hackett also asserts GE is not burdened by litigation in Florida because modern technology allows for easy transfer of information from Georgia to Florida, GE can compel its witnesses to appear in Florida as they are its employees, and Florida courts can issue subpoenas for depositions to the same extent Georgia courts can. (*See id.* 8, 11–12). Finally, Hackett contends GE has continually availed itself of Florida's courts in pursuing contract enforcement actions in the past and is not financially burdened by a Florida suit because GE is a large corporation. (*See id.* 10, 13).

The Court balances GE's and Hackett's assertions to determine whether transfer is appropriate.

**A.     The Action Might Have Been Brought in Georgia**

An action might have been brought in a transferee district if that district has subject matter jurisdiction over the action, personal jurisdiction over the defendant, and venue is proper in the transferee district. *See Windmere Corp.*, 617 F. Supp. at 10; 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3845, at 47–51 (3d ed. 2007). GE contends, and Hackett does not dispute, the action could have been brought in Georgia. Specifically, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, personal jurisdiction exists as GE's corporate office is located in Georgia, and venue is proper as events giving rise to this suit occurred there. Accordingly, the action might have been brought in Georgia.

**B.     The District Where the Operative Events Underlying the Complaint Took Place**

In a class action, "[w]here plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events

5

giving rise to the claim occurred." *Smith v. HireRight Solutions, Inc.*, No. 09-6007, 2010 WL 2270541, at *4 (E.D. Pa. June 7, 2010) (internal quotation marks and citation omitted).  Hackett maintains the events occurred in Florida as the agreement and its invoices were received, signed, and paid for in Florida and all damages occurred in Florida.  (*See* Hackett's Resp. 6–7).  These events, however, are not unique to Florida: Hackett represents a nationwide putative class whose members each experienced these events in their respective home forums.  In contrast, GE's corporate office is in Georgia, and any decisions whether to modify or increase the rate of Hackett's IMA — or the rate of any other IMA — occurred in Georgia.  (*See* O'Neill Aff. ¶¶ 3, 7–8).  Therefore, for the purposes of this venue transfer analysis, the operative events underlying the complaint took place in Georgia.  *See Smith*, 2010 WL 2270541, at *4.  This factor weighs in favor of transfer.

**C.    The Convenience of the Parties**

Although the relative inconvenience the parties face by changing venue is a factor in determining whether transfer is appropriate, "[w]here a transfer 'merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain.'"  *Mason*, 146 F. Supp. 2d at 1361 (quoting *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000)); *see also Cent. Money Mortg. Co.*, 122 F. Supp. 2d at 1346 ("Convenience of the parties is practically irrelevant to whether [a] motion to transfer should be granted.").  GE states it is inconvenienced by suit in Florida because its corporate offices and officers reside in Georgia; but GE has not shown an inconvenience in Florida greater than Hackett's potential inconvenience in Georgia.

GE contends, however, that Hackett is not inconvenienced by suit in Georgia because Hackett consented to suit there.  *See Stewart Org., Inc.*, 487 U.S. at 29–30 (noting an exclusive forum

selection clause is a significant factor in the transfer analysis).  The Court is not persuaded the forum

selection clause indicates Hackett will not be inconvenienced by suit in Georgia.  First, the parties'

forum selection clause is non-exclusive, and non-exclusive forum selection clauses are entitled to

less deference than exclusive forum selection clauses.  *See Prod. Fabricators, Inc. v. CIT Commc'ns*

*Fin. Corp.*, No. 06-cv-00537, 2006 WL 2085413, at *4 (D. Minn. July 25, 2006).  And second, the

inequality of the forum selection clause — in that Hackett was required to consent to jurisdiction in

certain venues but GE did not similarly consent — evidences the parties' unequal bargaining power.

*See Stewart Org., Inc.*, 487 U.S. at 30 (noting a district court must consider "the fairness of transfer

in light of the forum-selection clause and the parties' relative bargaining power").  Since GE is the

larger party with more bargaining power, it likely dictated the terms of the forum selection clause;

thus the clause does not indicate Georgia is a convenient forum for Hackett.

In addition, GE's alleged inconvenience in Florida is belied by the fact that it "has elected

to file over 40 collection actions in just Miami-Dade, Palm Beach, and Broward counties."

(Hackett's Resp. 10).  GE has consistently pursued collection actions in Florida that presumably

inconvenience the company and its employee-witnesses; claiming inconvenience now — when it

benefits GE — is unpersuasive.  *See Meterlogic*, 185 F. Supp. 2d at 1300 (noting courts have

considered factors other than those numerated above in determining whether to transfer venue).

For the foregoing reasons, the convenience of the parties does not weigh in favor of transfer.

**D.    The Convenience of the Witnesses**

"Convenience of the witnesses is given more weight when considering transfer of venue."

*Cent. Money Mortg. Co.*, 122 F. Supp. 2d at 1346 (citing *Gundle Lining Constr. Corp. v. Firemen's*

Case No. 10-20715-CIV-ALTONAGA/Brown

*Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994)).  To determine which party's witnesses are more inconvenienced by the venue, "the court must qualitatively evaluate the materiality of the testimony that the witness[es] may provide" with respect to the issues in the case, not simply compare the number of witnesses in the transferor and transferee forums.  *Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (internal quotation marks and citation omitted); *see also Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990) ("[C]ourts should look to the nature and quality of the witnesses [sic] testimony with respect to the issues in the case.").

GE asserts five witnesses are from Georgia: (1) David M. O'Neill, managing director of GE; (2) Virginia Cartmell-Martin, GE's national sales director; (3) Erin King, chief information officer of GE; (4) Debrah Carter, manager of operations; and (5) John T. Farmer, manager of recovery, *i.e.*, enforcement.  (*See* Mot. 13–14).  Ikon also identifies Stephanie Carter ("Carter"), a witness from Georgia, and unnamed witnesses from Pennsylvania.  (*See* Ikon's Resp. 2).  Defendants' witnesses will testify as to how the IMAs were managed and administered and how the fees were calculated and collected.  (*See id.*; Mot. 13–14).  Thus, Defendants' witnesses will provide mainly background information regarding the IMAs, and Defendants do not explain why any one witness's testimony is crucial to this case.

In addition, "transfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party."  *Mason*, 146 F. Supp. 2d at 1361.  Defendants' witnesses are employees of their respective companies.  Ikon and GE will encourage their presence at trial, meaning these witnesses will not have workplace hostility or

Case No. 10-20715-CIV-ALTONAGA/Brown

logistical confrontations from their employers. Thus, Defendants' witnesses are much less inconvenienced than they would be if they were non-employee-witnesses.

For the foregoing reasons, this factor does not support transfer.

**E.      The Relative Ease of Access to Sources of Proof**

Sources of proof include items such as documents, files, and other tangible materials crucial to the outcome of a case; the location of sources of proof and the ease with which the parties can transport them to trial affects whether transfer of venue is appropriate. *See, e.g.*, *Meterlogic*, 185 F. Supp. 2d at 1300; *Silong v. United States*, No. 5:05-CV-55-OC-10GRJ, 2006 WL 948048, at *3 (M.D. Fla. Apr. 12, 2006). Producing documents and other files for litigation, however, is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval. *See Mason*, 146 F. Supp. 2d at 1364.

GE asserts the IMAs, invoices, corresponding proofs of payment, and "all other relevant records related to the nationwide IMAs . . . are aggregately kept and maintained only in Georgia." (Mot. 16). These items are paper documents and files that are likely to be in electronic format or can easily be converted to electronic format. The cost of moving electronic files is the same regardless of distance. And even considering GE's assertion that GE must manually review and individually analyze each file — in Georgia — before GE can produce it to Hackett or use it at trial (*see* Reply 8 [ECF No. 49]), GE fails to show the costs of transporting its evidence to Florida after this protracted process, when compared to the relative costs of transporting this evidence within Georgia, is such an inconvenience that it warrants transfer.

In sum, this factor does not support transfer.

9

Case No. 10-20715-CIV-ALTONAGA/Brown

**F.      The Availability of Service of Process to Compel the Presence of Unwilling Witnesses**

Processes to compel a witness's presence are less necessary for employee-witnesses who are controlled by one of the litigants. *See Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1030–31 (S.D. Fla. 1991). The five witnesses GE plans to present at trial are all its employees, and Carter is Ikon's employee. (*See* Mot. 13–14; Ikon's Resp. 2). As GE and Ikon control these employee-witnesses, they do not need a process to compel the witnesses' presence. Furthermore, Ikon and GE may depose non-employee-witnesses who are unwilling to physically appear at trial (such as Ikon's unnamed Pennsylvania witnesses) and use the testimony at trial. *See* FED. R. CIV. P. 45(a)(2); *see also Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1138 (noting there was "no reason why the testimony of witnesses could not be presented by deposition"). Therefore, any difference in the abilities of Florida and Georgia courts to adequately compel the presence of unwilling witnesses does not support transfer.

**G.      The Cost of Obtaining the Presence of the Witnesses**

Although there are costs, such as travel and temporary lodging, from obtaining the presence of witnesses who are not Florida residents, GE does not show that it cannot pay these costs or that the inconvenience is so grave it justifies transfer of the action to Georgia. *See Baker v. Major League Baseball Props., Inc.*, No. 3:08cv114/MCR, 2009 WL 1098482, at *3 (N.D. Fla. Apr. 22, 2009) (noting the relative financial means of the parties mitigated against transfer because the "corporate defendants clearly ha[d] greater means than plaintiff"). Therefore, this factor does not weigh in favor of transfer.

10

**H.     The Public Interest**

"[P]ublic interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (5th Cir. 2009) (internal quotation marks and citation omitted); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (listing the private and public interest factors relevant to a section 1404 analysis).

GE asserts the public interest favors trial in Georgia because Georgia is more familiar with its own contract law and because "all relevant operative facts that gave rise to the basis of KHA's complaint" occurred in Georgia.  (Mot. 18).  With respect to the law that will govern this suit, although Hackett asserts a breach of contract claim under Georgia law, it also asserts a FDUTPA claim.  Hence the hurdles that exist when Florida applies Georgia contract law would in turn exist when Georgia applies Florida statutory law.  As noted above, however, the operative events did occur in Georgia.  The public interest thus marginally favors transfer, but only because the facts giving rise to this suit occurred in Georgia.

**I.     All Other Practical Problems That Make Trial of the Case Easy, Expeditious, and Inexpensive**

The parties have not presented any other practical problems that weigh for or against transfer.

### IV.  CONCLUSION

Although Hackett's choice of forum is entitled to less deference because this suit is a putative class action and because the underlying events occurred in Georgia, GE and Ikon have not

Case No. 10-20715-CIV-ALTONAGA/Brown

demonstrated transfer is warranted because no factor — other than the location of the underlying events — weighs in favor of transfer.  Therefore, it is

ORDERED AND ADJUDGED that the Motion to Transfer Venue **[ECF No. 16]** is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 4th of August, 2010.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

12