UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20715-CIV-ALTONAGA/Brown

**KENNETH F. HACKETT & ASSOCIATES,
INC.**, and all others similarly situated,

    Plaintiffs,
vs.

**GE CAPITAL INFORMATION TECH.
SOLUTIONS, INC.** d/b/a **IKON FIN. SERVS.**;
and **IKON OFFICE SOLUTIONS, INC.**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, IKON Office Solutions, Inc.'s Motion to Dismiss Plaintiff's Amended Class Action Complaint [ECF No. 43], filed on July 7, 2010; and Defendant, GE Captial's [sic] Amended Motion to Dismiss Counts II and III of Plaintiff's Amended Class Action Complaint [ECF No. 51], filed on July 16, 2010.  The Court has carefully considered the parties' submissions and applicable law.

### I.  BACKGROUND[1]

This case arises out of an agreement for the use and service of an office copy machine. Plaintiff, Kenneth F. Hackett & Associates, Inc. ("KHA"), entered into an Image Management Agreement ("IMA" or "Agreement") [ECF No. 31-1] with Defendant, GE Capital Information Technology Solutions, Inc. d/b/a IKON Financial Services ("IFS")[2], on August 15, 2008.  (*See*

---

[1] This section summarizes the allegations of Plaintiff's Amended Complaint [ECF No. 31], which are accepted as true.

[2] The parties use different acronyms for the Defendant, GE Capital Information Technology Solutions, Inc. d/b/a IKON Financial Services ("GE Capital" by Plaintiff; "GECITS" by Defendants).  The

IMA 2). The Agreement specifies IFS is "a finance company and neither the manufacturer nor the distributor" of the copier. (*Id.* 3 ¶ 6). It is the "sole owner and titleholder" of the leased copier (*id.* 2 ¶ 3), and is "the party responsible for financing and billing" (*id.* 4 ¶ 15). Defendant, IKON Office Solutions, Inc. ("IKON"), is "one of the largest distributors of office solutions in the world." (*Id.* 4; *see also* Am. Compl. ¶ 7). IKON field representatives present the standard-form Agreement to prospective consumers, including KHA, using IKON Web Sales Forms. (*See id.* 2–4; Am. Compl. ¶ 23). IKON also delivers and installs the copier; provides the maintenance, supplies, and performance guarantees for the equipment covered by the Agreement; and removes the equipment upon termination of the Agreement. (*See* IMA 4–6).

The standard-form Agreement appears to have two components: a two-page equipment lease agreement requiring the signatures of both the customer and an authorized signer for IFS (*id.* 2–3); and a one-page service commitment from IKON, which requires no signatures (*id.* 4). Pursuant to the IMA, KHA agreed to lease from IFS a Canon copier for a minimum term of sixty months and to pay a "Minimum Payment Without Tax" of $454.85 per month. (*Id.*). The Agreement includes provisions guaranteeing a minimum of 15,000 black and white images per month, establishing the price for additional images, and providing for quarterly meter reading and billing for excess images. (*See id.*). There is also a place on the Agreement to enter the "Cost Per Image," but the box on KHA's IMA was left blank. (*See id.*). KHA did not pay a cost per image because it paid a fixed price for the "bundle," which included the lease of the copier, related services and support, and a guaranteed minimum number of copies. (*See* Am. Compl. ¶

---

Court uses the name and acronym specifically adopted by the Defendants in their Agreement with the Plaintiff: "IKON Financial Services" and "IFS." (*See* Am. Compl. Ex. A IMA 4).

Case No. 10-20715-CIV-ALTONAGA/Brown

12). Also included in the lease agreement is a provision under "Payments," which states: "If the term hereof exceeds 12 months, the Cost Per Image and the Cost of Additional Images may be increased up to 5% annually for each year beyond the initial 12-month period." (IMA 3 ¶ 10).

The related-services portion of the Agreement includes "Image Management Commitments" or "Guarantees" by IKON. (*See id.* 4–6). According to the Agreement, the Guarantees "are separate and independent obligations of IKON" and are not incorporated by reference. (*Id.* 3 ¶ 15). Additionally, the Agreement indicates IFS is the party "responsible for financing and billing [the] Agreement, including, but not limited to, the portion of [] payments under [the] Agreement that reflects consideration owing to IKON in respect of its performance of the Guarantees." (*Id.*). Included in the "Guarantees" is a provision entitled, "Term Price Protection," which states:

> The Image Management Cost Per Image and the Cost of Additional Images, as described on the Image Management Agreement, are guaranteed against any price increase during the first 12 months of the term of the Image Management Agreement. If the minimum term exceeds 12 months, the Image Management Cost Per Image and the Cost of Additional Images may be increased up to 5% annually for each year beyond the initial 12-month period.

(IMA 4).

IFS, "with high level direction from IKON," improperly increased KHA's original minimum payment by five percent in September 2009, after the first year of the Agreement. (Am. Compl. ¶¶ 14, 16). Because the Agreement includes default provisions that permit IFS to repossess the copier and to immediately require all payments due under the Agreement if KHA did not pay the increased payment, KHA maintains it was without recourse and was "forced to pay the illegal 5% increase." (*Id.* ¶¶ 17–21). Moreover, IFS, "with the knowledge and

3

Case No. 10-20715-CIV-ALTONAGA/Brown

agreement of IKON, regularly exercises" its right to seize leased equipment and demand future payments as evidenced by "over 40 collection actions" in South Florida and similar claims elsewhere. (*Id.* ¶ 22). Finally, IKON (a) presented the Agreement to prospective customers using a standard form "developed and . . . modified by [IFS] and IKON" (*id.* ¶ 23); (b) was "instrumental in the formulation, invoicing, and pricing of the IMA" (*id.* ¶ 24); (c) "directed [IFS] to uniformly increase consumers'" payments (*id.* ¶ 25); and (d) was "aware of the IMA and its terms" at all material times (*id.* ¶ 26).

KHA brought suit pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of two classes: (1) a "Nationwide Monetary and Injunctive Class as to [IFS]"; and (2) a "Florida Monetary and Injunctive Class as to both Defendants." (*Id.* ¶ 27) (emphasis omitted). Against IFS, KHA alleges breach of contract under Georgia law (Count I) and seeks a declaratory judgment against IFS pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 (Count II). (*See id.* ¶¶ 34–44). KHA also alleges violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–.23, against both IFS and IKON (Count III). (*See id.* ¶¶ 45–54).

IKON timely filed its Motion to Dismiss ("IKON's Motion") the single count against it pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting KHA fails to state a cause of action against IKON. (*See* IKON's Mot. 1). IFS filed its Motion to Dismiss ("IFS's Motion") two of the three counts against it, the declaratory judgment and the FDUTPA claims, for failure to state a claim under Rule 12(b)(6). (*See* IFS's Mot. 1).

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 WL 2431463, at *4 (11th Cir. Aug. 11, 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

## III.  ANALYSIS

IFS seeks to dismiss KHA's claims for declaratory judgment and violation of FDUTPA (Counts II and III), and IKON seeks dismissal of the FDUTPA claim (Count III) against it. KHA filed a Consolidated Response [ECF No. 60] to the separate motions of IFS and IKON (collectively, the "Defendants"), to which the Defendants filed their respective Replies. (*See* IKON's Reply [ECF No. 63]; IFS's Reply [ECF No. 70]). Because Defendants' assertions are

Case No. 10-20715-CIV-ALTONAGA/Brown

sufficiently similar with respect to KHA's FDUTPA claim, the Court considers them together following an analysis of whether KHA fails to state a claim for declaratory judgment.

A.     **Declaratory Judgment Pursuant to 28 U.S.C. § 2201 (Count II)**

IFS asserts the claim for declaratory relief in Count II is duplicative of KHA's breach of contract claim (Count I), and is therefore "'redundant and unnecessary.'"  (IFS's Mot. 6) (quoting *Sembler Family P'ship # 41, Ltd. v. Brinker Fla., Inc.*, No. 8:08-cv-1212-T-24 MAP, 2008 WL 5341175, at *2 (M.D. Fla. Dec. 19, 2008)).  In response, KHA maintains IFS does not even address whether KHA states a claim for declaratory relief.  (*See* Resp. 5–6).  KHA also contends the Court is not required to dismiss the claim and further submits declaratory relief will provide it with prospective relief for the duration of its Agreement with IFS.  (*See id.* 5–9).

Regarding the argument that Count II is redundant and unnecessary, "being redundant, if it is, is [not] grounds for dismissal under Rule 12(b)(6) for failing to state a claim." *In re RCK Modular Homes Sys., Inc.*, 363 B.R. 29, 31 (D.N.H. 2007).  Although IFS relies on Rule 12(b)(6), it plainly and repeatedly maintains KHA's declaratory relief claim is "duplicative of the breach of contract claim" (IFS Mot. 3), "mirrors the breach of contract claim" (*id.* 6), is "'redundant and unnecessary'" (*id.*) (quoting *Sembler*, 2008 WL 5341175, at *2), "would add nothing . . . and must be dismissed" (*id.* 8).  Such arguments appear to draw from Rule 12(f), which allows the Court to "strike from a pleading . . . any *redundant*, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f) (emphasis added).  But "Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or 'time wasters,'" and are regularly "denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of

6

Case No. 10-20715-CIV-ALTONAGA/Brown

significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, CIVIL § 1382 (3d ed. 2004) (footnote call numbers omitted).

Regardless of how IFS's argument is regarded, the Court will not dismiss or otherwise strike Count II for failure to state a claim. The DJA provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," as long as there is an actual controversy. 28 U.S.C. § 2201(a). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act . . . ." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). Whether to provide declaratory relief "'depend[s] upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Id.* at 287 (quoting *Public Serv. Comm. of Utah v. Wycoff Co.*, 344 U.S. 237, 243 (1952)). The DJA "is to be liberally construed to achieve its wholesome and salutary purpose." *Allstate Ins. Co. v. Emp'rs Liab. Assur. Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971).

Because the decision to entertain a declaratory claim is discretionary, some courts dismiss claims for declaratory relief where the plaintiff also alleges a sufficient and related breach of contract claim. *See Fernando Grinberg Trust Success Int. Props. LLC v. Scottsdale Ins. Co.*, No. 10-20448-Civ, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010) (dismissing claim where plaintiff also defaulted); *Eisenberg v. Standard Ins. Co.*, No. 09-80199-CIV, 2009 WL 3667086, at *2–3 (S.D. Fla. Oct. 26, 2009) (dismissing claim where plaintiff sought declaration of rights between contracting parties as well as entitlement to future benefits);

*Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at *4 (S.D. Fla. Aug. 25, 2009) (dismissing claim that sought a declaration the parties' contract was breached and specifying the amount of damages).  Other courts allow claims for declaratory relief to travel with a claim for breach of contract.  *See Parr v. Maesbury Homes, Inc.*, No. 6:09-cv-1268-Orl-19GJK, 2009 WL 5171770, at *8–9 (M.D. Fla. Dec. 22, 2009); *Martin v. Monarch Life Ins. Co.*, No. 94-1182-CIV-T-17E, 1995 WL 127157, at *2 (M.D. Fla. Mar. 21, 1995).  For example, in *Johnson v. Geico Gen. Ins. Co.*, No. 08-80740, 2008 WL 4793616, at *3 (S.D. Fla. Nov. 3, 2008), where both a breach of contract and a claim for declaratory relief were pleaded, the court denied the motion to dismiss despite the defendant's assertion "the breach of contract claim provide[d] the plaintiff with full and adequate relief."  Relying on Rule 57 of the Federal Rules of Civil Procedure,[3] the *Johnson* court observed "the fact that Plaintiff could have simply brought an action for breach of contract does not prevent him from also seeking a declaratory judgment to establish coverage."  *Id.* (citing *City of Leominster v. Pittsburgh-Des Moines Steel Co.*, 201 F. Supp. 66, 68 (D. Mass. 1962)).

A review of the cases cited by the parties suggests two concerns dominate decisions to dismiss a declaratory relief claim pleaded with a breach of contract claim: the completeness of the relief afforded to a party when it prevails on its breach of contract claim and judicial economy.  The first consideration is whether additional benefits are available to a plaintiff through declaratory relief, which cannot be secured by a favorable ruling on its breach of contract claim.  The judicial economy analysis asks whether the declaratory relief claim so

---

[3] Rule 57 states, in relevant part: "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  FED. R. CIV. P. 57.

Case No. 10-20715-CIV-ALTONAGA/Brown

overlaps the breach of contract claim as to be wholly subsumed by it, making litigation on the declaratory claim inefficient and unnecessary. In *Fernando Grinberg*, for example, the court considered whether the breach of contract claim "involve[d] the same factual dispute as the declaratory judgment claim" and then determined whether the plaintiff could "secure full, adequate and complete relief through the breach of contract claim." 2010 WL 2510662, at *1. In *Eisenberg*, a case relied upon by IFS, the court dismissed the plaintiff's declaratory judgment claim because the court recognized reaching the plaintiff's breach of contract claim would require it to interpret the terms of the contract. 2009 WL 3667086, at *2. As a result, the doctrine of collateral estoppel would apply — even without a declaratory judgment as to the meaning of the same terms — in any subsequent contractual dispute. (*See id.* at *3).

IFS encourages the Court to adopt the *Fernando Grinberg* and *Eisenberg* approaches and maintains declaratory relief is unnecessary because collateral estoppel will apply if KHA prevails on its breach of contract claim. (*See* IFS's Mot. 7–9; IFS's Reply 4–5). While IFS is correct, the argument assumes KHA must prevail on its breach of contract claim in order to enjoy the benefits it seeks through the declaratory judgment claim. But KHA may lose its breach of contract claim and still be entitled to declaratory relief.

In alleging the claim for declaratory relief in its Amended Complaint, KHA states "[t]here is a real, immediate continuing controversy between the Plaintiff and the Class and [IFS]." (Am. Compl. ¶ 42). It also claims "Plaintiff and the Class will continue to face the demand to pay these increased amounts throughout the term of the IMAs." (*Id.* ¶ 43). Finally, KHA maintains "[a] decision favorable to the Plaintiff and the Class, determining that the IMA does not allow [IFS] to increase the Minimum Payment Without Tax, would redress the injury

Case No. 10-20715-CIV-ALTONAGA/Brown

and/or threatened injury the Plaintiff and the Class have suffered." (*Id.* ¶ 44). For the relief requested, KHA seeks "[a] Declaratory Judgment pursuant to 28 U.S.C. [sic] § 2201 declaring that [IFS] cannot raise the Minimum Payment Without Tax pursuant to the IMA." (*Id.* ¶ 54(c)).

KHA's claim for declaratory relief is clearly forward-looking as is apparent from the language of the Amended Complaint, while its breach of contract claim is retrospective in nature. (*See* Resp. 8). IFS maintains this is irrelevant because if there is merit to the breach of contract claim, "by necessity, an adjudication will be made that such charges are inappropriate in the future." (IFS's Mot. 8; *see also* Reply 5 (stating KHA's argument "borders on the spurious . . . to argue [IFS] would continue to commit a practice that a court found constituted a breach of contract")). Quoting *Eisenberg*, IFS points out "'a decision on the merits of the breach of contract claim would render the [] request for declaratory judgment moot or redundant.'" (IFS's Mot. 9 (quoting *Eisenberg*, 2009 WL 3667086, at *2–3)). While true if KHA prevails, it is also possible KHA's breach of contract claim may be barred by the voluntary payment doctrine under Georgia law or some other defense, making collateral estoppel unavailable. Yet KHA could remain entitled to declaratory relief as to future payments or increases under the Agreement. In short, should KHA not prevail on its breach of contract claim, it may still be entitled to declaratory relief. For this reason, KHA's claim for declaratory relief is not redundant and will not be dismissed.

B.  **FDUTPA Claim Against IKON and IFS (Count III)**

IKON and IFS seek to have the FDUTPA claim against them dismissed pursuant to Rule 12(b)(6) because (1) the claim is duplicative of KHA's breach of contract claim (*see* IKON's Mot. 10–13; IFS's Mot. 9–11); (2) the claim against IFS does not meet the pleading standards of

Case No. 10-20715-CIV-ALTONAGA/Brown

Rule 8[4] (*see* IFS's Mot. 12–13); and (3) the Amended Complaint fails to state a FDUTPA claim against IKON (*see* IKON's Mot. 7–9). KHA maintains it has alleged against both Defendants a proper FDUTPA claim, which is not duplicative of its breach of contract claim. (*See* Resp. 9–18).

The FDUTPA is designed "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). "[A] consumer claim for damages under [the] FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (citations omitted). A deceptive act or practice is one "'that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Millennium Commc'ns & Fulfill., Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000) (quoting *Southwest Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1434-35 (9th Cir. 1986)). *See also Rollins*, 951 So. 2d at 869 ("A deceptive practice is one that is 'likely to mislead' consumers.") (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)). "An unfair practice is 'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (internal quotation marks and citation omitted)).

---

[4] The proper pleading standard for a FDUPTA claim is Rule 8(a) as asserted by KHA (*see* Resp. 14) and acknowledged by IKON (*see* IKON's Reply 2, n.1). *See Gastaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009); *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005).

Case No. 10-20715-CIV-ALTONAGA/Brown

In its FDUTPA claim, KHA specifically alleges the following "deceptive, unfair, oppressive" "scheme" by the Defendants:

> a) IFS "uniformly and deceptively claims it is entitled to an increase" in payments without authority;
>
> b) IKON and IFS claimed the increase was a cost per image increase when KHA did not have a cost per image Agreement;
>
> c) if KHA did not pay the increase, IKON and IFS threatened to repossess the copier and demand full lease payments; and
>
> d) IKON directed IFS to increase KHA's payments in violation of the Agreement.

(Am. Compl. ¶ 51). KHA also alleges the Defendants' "scheme" was designed to increase their profits to the detriment of consumers (*id.* ¶ 52), and IFS raised the payment one year into the contract "with high level direction from IKON" (*id.* ¶ 14).

**1. Purported Redundancy of KHA's FDUTPA and Breach of Contract Claims**

The Defendants maintain KHA's FDUTPA claim is nothing more than a reiteration of KHA's breach of contract claim and should be dismissed. (*See* IKON's Mot. 10–13; IFS's Mot. 9–12). IFS, in particular, asserts the only allegations against it stem from the alleged breach of contract claim and are not allegations of unfair or deceptive behavior. (*See* IFS's Mot. 11). Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or "giving rise" to the breach, and does not "rely solely on a violation of the Agreement as a basis for assertion of a FDUTPA claim." *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (granting summary judgment to defendant). Relying on *Rebman*, 575 F. Supp. 2d at 1278–80, the Defendants suggest KHA's

Case No. 10-20715-CIV-ALTONAGA/Brown

FDUTPA claim does not go the acts underlying the breach of contract, but only to the breach itself. (IKON's Mot. 10–12; IFS' Mot. 9–11).

While undoubtedly related to its contract claim against IFS, KHA's FDUTPA claim does allege something more than a mere breach. KHA frames its FDUTPA claim against IFS — a party to the contract — and IKON, which is not an apparent party to the contract. KHA then points to the Defendants' practice of charging a price increase to consumers — purportedly attributable to IKON but made through an Agreement with IFS — as a deceptive and unfair scheme. *See Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009) (FDUTPA claim "is not defined by the express terms of a contract, but instead encompasses unfair and deceptive practices arising out of business relationships"). KHA also alleges the Defendants together threaten to repossess the copier and enforce payment of the entire contractual amount even though KHA entered into an agreement with IFS, and further allege IKON and IFS work together in carrying out the deceptive and unfair act. Thus, unlike *Rebman*, where the plaintiffs failed to challenge the defendant's underlying practice of rounding up or down prices in textbook sales, *see* 575 F. Supp. 2d at 1279, KHA makes out a claim for acts that give rise to the also-alleged breach of contract by IFS. KHA describes — albeit, without the benefit of full discovery — a claim of underlying deceptive and unfair business practices characteristic of FDUTPA claims. *See Siever*, 669 F. Supp. 2d at 1293, n.2 (courts regard the concepts of deception or unfair methods of competition to be "extremely broad"). At this stage of litigation, nothing more is required.

Case No. 10-20715-CIV-ALTONAGA/Brown

### 2. KHA's FDUTPA Claim Against IFS and the Rule 8 Pleading Standard

IFS maintains KHA failed to meet the pleading standards imposed by Rule 8 of the Federal Rules of Civil Procedure and the *Iqbal – Twombly* line of cases in alleging its FDUTPA claim against it. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570. (*See* IFS's Mot. 12–13). In its Motion, IFS treats the pleading issue as an afterthought, posing a series of rhetorical questions that are not helpful in evaluating KHA's FDUPTA claim against IFS through the lens of Rule 8 or prevailing law. (*See* IFS's Mot. 12). IFS also acknowledges it did not sell the service for which it is allegedly charging under the IMA. (*See id.*). Beyond the rhetorical questions and IFS's own conclusory assertions, IFS has failed to establish a basis for dismissing the FDUPTA claim against it.

### 3. Sufficiency of the FDUTPA Allegations Against IKON

IKON asserts the FDUTPA claim against it should be dismissed for a number of reasons. First, IKON relies on *Iqbal*, 129 S. Ct. at 1950, and asserts KHA "has not alleged any specific facts showing that IKON engaged in a scheme with [IFS] or that IKON somehow controlled or directed [IFS] in its relevant actions." (IKON's Mot. 9). It maintains KHA's allegations only "permit the Court to infer 'the mere possibility of misconduct' by IKON" (*id.* 10) (quoting *Iqbal*, 129 S. Ct. at 1950), and do not show IKON was a "direct participant" in the FDUTPA violation (*id.*) (quoting *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (5th DCA 2008)). Second, IKON suggests that because KHA does not allege IKON increased the payments, the other allegations against it are legally insufficient to state a FDUTPA claim. (*See id.* 6–10). Finally, IKON asserts KHA complains only of conduct by IFS. (*See id.* 13–14).

Case No. 10-20715-CIV-ALTONAGA/Brown

IKON maintains because it did not increase the payments, it cannot be held to account under the FDUTPA. (*See id.* 6–7). To substantiate its position, IKON points to Exhibit B, the invoices from IFS to KHA, which reflect the five percent increase billed by IFS between August and September 2009. (*See id.* 6). IKON also relies on *Zlotnick v. Premier Sales Grp., Inc.*, 431 F. Supp. 2d 1290, 1294–95 (S.D. Fla. 2006), for the premise that as a non-party to the Agreement, IKON's minimal involvement in the transaction is insufficient to hold it accountable for a FDUTPA violation. (*See id.* 7–9). IKON would have the Court focus solely on the monetary exchange, specifically the increase in payments, and ignore the other allegations of the "scheme" made by KHA. (*See* Am. Compl. ¶¶ 51–52). IKON would also have the Court ignore the alleged relationship between IFS and IKON as well as the Agreement by IFS and the Commitments by IKON, which facially suggest an interdependent business relationship between the two companies.

KHA does allege IKON presented IFS's leasing agreement for a copier owned by IFS, but maintained and serviced by IKON. (*See* IMA 2–4). KHA also alleges IKON and IFS claimed the increased charges were a cost per image increase pursuant to the "Commitments" made by IKON. (*See id.* 4). KHA also alleges IKON directed IFS to increase the payments, which — given the language of IKON's Commitment — is both plausible and supported by the Amended Complaint. (*See* Am. Compl ¶ 14; IMA 4). It is also plausible, as alleged, the Defendants could repossess the copier. In sum, sufficient facts are alleged by KHA to form a FDUPTA claim that goes beyond simply inferring "the mere possibility of misconduct" by IKON. *Iqbal*, 129 S. Ct. at 1950.

Case No. 10-20715-CIV-ALTONAGA/Brown

Moreover, IKON is not in the same position as Premier Sales Group, the dismissed defendant in *Zlotnick* that was not a party to the contract and was not alleged to be involved "in the inducement, negotiation, creation or cancellation of the Reservation Agreement." *Zlotnick*, 431 F. Supp. 2d at 1294. Here, IKON is alleged to have not only played a role in the initiation of the Agreement between IFS and KHA, but to have remained a participant in the business relationship between IFS and KHA for the duration of the Agreement. *See Sundance Apts. I, Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1222 (S.D. Fla. 2008) (it is sufficient to allege direct participation by a party in a FDUTPA violation initiated by another). It is further alleged that the increase in the cost per image was attributable to the actions of both IKON and IFS, which is plausible pursuant to IFS's Agreement and IKON's Commitments. In sum, KHA has not limited its allegations to IFS's actions, but has pleaded a sufficient claim against IKON for violation of the FDUTPA under the pleading standards of Rule 8 and current law.

### IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant, IKON Office Solutions, Inc.'s Motion to Dismiss Plaintiff's Amended Class Action Complaint **[ECF No. 43]** is **DENIED**.

2. Defendant, GE Captial's [sic] Amended Motion to Dismiss Count II and III of Plaintiff's Amended Class Action Complaint **[ECF No. 51]** is **DENIED**.

Case No. 10-20715-CIV-ALTONAGA/Brown

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of October, 2010.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record